JS 44   (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

RONALD L. KEENE, JR.

**(b)** County of Residence of First Listed Plaintiff    Chester
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Julie A. Uebler, Esquire
Console Mattiacci Law, LLC
1525 Locust Street, 9th Floor Philadelphia PA 19102

## DEFENDANTS

TRANSDIGM GROUP, INC and KORRY ELECTRONICS CO.,

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*
Michael S. Friedman, Esquire
Jackson Lewis PC
1601 Cherry St # 1350 Philadelphia, PA 19102

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1   U.S. Government
  Plaintiff
- [X] 3   Federal Question
  *(U.S. Government Not a Party)*
- [ ] 2   U.S. Government
  Defendant
- [ ] 4   Diversity
  *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                           *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 720 Labor/Management Relations | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 740 Railway Labor Act | **SOCIAL SECURITY** | [ ] 485 Telephone Consumer Protection Act |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | [ ] 385 Property Damage Product Liability | [ ] 751 Family and Medical Leave Act | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise | | | [ ] 790 Other Labor Litigation | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ Exchange |
| | | | [ ] 791 Employee Retirement Income Security Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | **FEDERAL TAX SUITS** | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [X] 442 Employment | [ ] 510 Motions to Vacate Sentence | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | | [ ] 950 Constitutionality of State Statutes |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. § 1981;42 U.S.C. § 2000e;29 U.S.C. §§ 623(a) and (d) and 626(c)
Brief description of cause:
Plaintiff brings this action against Defendant for race and age discrimination and retaliation.

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
in excess of $150,000

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   [X] Yes   [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE
July 29, 2021

SIGNATURE OF ATTORNEY OF RECORD
*Julie A. Uebler*

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| RONALD L. KEENE, JR. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| TRANSDIGM GROUP, INC. and | : | |
| KORRY ELECTRONICS CO., | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants.  (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.　　　　　( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
　　 and Human Services denying plaintiff Social Security Benefits.　　　　　　　( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.　( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
　　 exposure to asbestos.　　　　　　　　　　　　　　　　　　　　　　( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
　　 commonly referred to as complex and that need special or intense management by
　　 the court.  (See reverse side of this form for a detailed explanation of special
　　 management cases.)　　　　　　　　　　　　　　　　　　　　　　( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.　( X )

| | | |
|---|---|---|
| July 29, 2021 | _Julie Q. Uebler_ | Plaintiff |
| **Date** | **Attorney-at-law** | **Attorney for** |
| (215) 545-7676 | (215) 827-5101 | uebler@consolelaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: ___Pottstown, PA___

Address of Defendant: ___1301 East 9th Street, Suite 3000 Cleveland, OH 44114___ ; 11910 Beverly Park Rd, Everett, WA 98204

Place of Accident, Incident or Transaction: ___Pottstown, PA___

---

**RELATED CASE, IF ANY:**

Case Number: _____    Judge: _____    Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?   Yes ☐   No ☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?   Yes ☐   No ☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?   Yes ☐   No ☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?   Yes ☐   No ☒

I certify that, to my knowledge, the within case ☐ is / ☒ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: ___July 29, 2021___    _signature: Julie A. Uebler_    ___71297___
*Attorney-at-Law / Pro Se Plaintiff*    *Attorney I.D. # (if applicable)*

---

**CIVIL:** (Place a √ in one category only)

**A.** *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☒ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
   *(Please specify)* _____

**B.** *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury *(Please specify)*
7. ☐ Products Liability
8. ☐ Products Liability – Asbestos
9. ☐ All other Diversity Cases
   *(Please specify)*

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, ___Julie A. Uebler, Esquire___ , counsel of record *or* pro se plaintiff, do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: ___July 29,2021___    _signature: Julie A. Uebler_    ___71297___
*Attorney-at-Law / Pro Se Plaintiff*    *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| RONALD L. KEENE, JR. | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | |
| | : | |
| | : | |
| TRANSDIGM GROUP, INC. and | : | |
| KORRY ELECTRONICS CO., | : | JURY TRIAL DEMANDED |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |
| | : | |

## COMPLAINT

## INTRODUCTION

Plaintiff, Ronald L. Keene, Jr. ("Plaintiff" or "Mr. Keene"), by and through his counsel, files this Complaint and asserts claims of race and age discrimination and retaliation against TransDigm Group, Inc. and Korry Electronics Co. (collectively, "Defendants"). At the time TransDigm acquired his employer in March 2019, Mr. Keene had been making significant contributions in the area of sales and business development to the Company's predecessors for close to a decade, with a particular focus on the naval military market. Rather than continue Mr. Keene's employment, TransDigm's predominantly Caucasian management team terminated Mr. Keene's employment because of his race (African America), age (oldest in his division at age 63), and because he had previously complained about discrimination. Mr. Keene brings this lawsuit to hold Defendants accountable for their blatant violation of his civil rights.

## PARTIES

1.      Ronald L. Keene, Jr. is an adult individual who resides in Pottstown, Pennsylvania.

2.      Mr. Keene's race is African American.

3.      Mr. Keene's date of birth is October 4, 1955.

4.      Defendant, TransDigm Group, Inc. ("TransDigm"), is a publicly traded company that designs, produces and supplies engineered aircraft components for commercial and military aircraft.

5.      TransDigm's corporate office is located at 1301 East 9th Street, Suite 3000, Cleveland, OH 44114.

6.      Defendant, Korry Electronics Co. ("Korry"), is a wholly-owned subsidiary of TransDigm.

7.      Korry's corporate office is located at 11910 Beverly Park Road, Everett, Washington 98204.

8.      TransDigm and Korry (collectively "Defendants") are engaged in an industry affecting commerce and regularly do business in the Commonwealth of Pennsylvania.

9.      At all times relevant to this Complaint, Defendants were employers within the meaning of the statutes which form the basis of this matter.

10.     At all times relevant to this Complaint, Plaintiff was an employee of Defendants within the meaning of the statutes which form the basis of this matter.

11.     At all times material hereto, Plaintiff worked for Defendants out of his home in Pennsylvania.

<u>JURISDICTION AND VENUE</u>

12.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343.

13.     With respect to Plaintiff's allegations of race discrimination and retaliation, this action is authorized and instituted pursuant to Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"), and Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e, and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

14.     With respect to Plaintiff's allegations of age discrimination and retaliation, this action is authorized and instituted pursuant to the Age Discrimination in Employment Act, as amended ("ADEA"), 29 U.S.C. §§ 623(a) and (d) and 626(c).

15.     This Court has supplemental jurisdiction with respect to Plaintiff's claims for race and age discrimination and retaliation under the Pennsylvania Human Relations Act ("PHRA"), as amended, 43 P.S. § 951, <u>et seq.</u>, pursuant to 28 U.S.C. § 1367.

16.     This case is not subject to compulsory arbitration because Plaintiff seeks injunctive relief and the amount in controversy exceeds the jurisdictional amount for arbitration of One Hundred Fifty Thousand Dollars ($150,000), exclusive of interest and costs.

17.     Plaintiff filed an administrative complaint with the Pennsylvania Human Relations Commission ("PHRC"), which was dual filed with the Equal Employment Opportunity Commission ("EEOC"), on May 2, 2019. Attached hereto, incorporated herein, and marked as Exhibit A is a true and correct copy of the PHRC administrative complaint (with personal identifying information redacted).

18.     Plaintiff has exhausted his administrative remedies with respect to the ADEA and Title VII because the EEOC issued a Notice of Right to Sue on May 7, 2021. Attached hereto, incorporated herein, and marked as Exhibit B is a true and correct copy of that Notice.

19.     Plaintiff has exhausted his administrative remedies with respect to the PHRA since more than one year has passed since he filed his complaint with the PHRC.

20.     Venue is properly invoked pursuant to 29 U.S.C. § 1391(b) because the actions complained of herein occurred within the jurisdictional limit of this Court.

## FACTUAL ALLEGATIONS

Keene's Military And Employment History Through 2017

21.      Mr. Keene served his country honorably in the Marine Corps from 1978 to 1985, and thereafter served in the Marine Corps Reserves until 1988.

22.      Following the completion of his full-time military service, Mr. Keene worked in a number of sales and business development positions for federal contractors, including Honeywell, York International, and Thales Aerospace & Defense.

23.     For the period 2010 through 2015, Mr. Keene worked for Barco Federal Systems ("Barco") as the Director of Business Development.

24.     In or about February 2015, Esterline Controls and Communications ("Esterline") acquired Barco. Mr. Keene continued to work as a Director of Business Development after the acquisition.

25.     Mr. Keene reported to Andy Buchan, Esterline Vice President, Strategic Development (Caucasian, 40s). [1] Mr. Buchan reported to Steven Luys (Caucasian, 50s), Vice President of Strategic Marketing.

---

[1] Ages identified herein are approximations.

26.     At the time, Mr. Keene was an employee of Esterline Federal, LLC, a subsidiary of Esterline, based in Duluth, Georgia.

27.     In or about November 2016, Mr. Luys advised Mr. Keene and announced at a National Sales Meeting in Belgium that he intended to promote him to Director of Business Development for the platform worldwide. Mr. Luys asked Mr. Keene to travel to Atlanta to meet with him about the position.

28.     The Esterline platform was made up of five (5) different divisions: Korry, which focused on flight deck electronics; Mason Controls, which focused on handgrips; Avista, which focused on engineering; Palomar Products, which focused on communications and radios; and Racal Acoustics, which focused on headsets.

29.     In late November 2016, when Mr. Keene arrived in Atlanta just days after his promotion was announced at the National Sales Meeting, however, Mr. Luys advised Mr. Keene that he would be laid off due to budget issues, with a projected termination date of December 31, 2016.

30.     On or about December 22, 2016, Mr. Luys advised Mr. Keene that his projected termination date was revised to March 31, 2017.

31.     The Esterline business leaders did not want to lose Mr. Keene since he was a valuable contributor to the Company's bottom line.

32.     By letter dated March 16, 2017, Mr. Buchan offered Mr. Keene the opportunity to retain his employment with a transfer from Esterline Federal to Esterline as Director of Business Development – Naval. At or about that time, Mr. Keene became an employee of the Korry subsidiary for administrative purposes.

33.     At the time of Mr. Keene's transition to Korry in 2017, Mr. Buchan agreed to continue Mr. Keene's compensation, including his bonus.

34.     In or about June 2017, Esterline hired Jason Childs (biracial, 48) to serve as Esterline's President.

35.     Soon thereafter, Esterline announced the creation of a new position of Vice President of Sales, reporting to Mr. Childs.

<u>Defendants' Discriminatory Failure to Promote Keene to Vice President of Sales</u>

36.     Mr. Keene received encouragement to apply for the Vice President opening from several division heads within Esterline, including Steven Ungs, Vice President and General Manager, Avista; Robert Gibbs, Vice President, Korry; and Mike Rabajon, Vice President, Palomar.

37.     Mr. Keene was qualified for the Vice President of Sales position.

38.     Mr. Keene applied for the position of Vice President of Sales in or about September 2017, and interviewed with Mr. Childs for the job.

39.     Shortly thereafter, Mr. Keene heard from his colleagues that Esterline had selected Pascal LeGuay (Caucasian, 43) for the Vice President of Sales position.

40.     Defendants' decision not to select Mr. Keene for the Vice President of Sales position was motivated by race (African American) and/or age (62) discrimination.

<u>Mr. Keene's Complaints of Discrimination</u>

41.     Mr. Keene then reached out to Wendy Galbreath (Caucasian), from Esterline's Human Resources department, to find out why he had not received formal notification of Esterline's decision to reject him for the promotion.

42.     During that conversation, Mr. Keene also asked Ms. Galbreath how many people of color were in Esterline's senior management ranks.

43.     Ms. Galbreath seemed surprised by Mr. Keene's question, and wanted to know why Mr. Keene was asking her about race. Ms. Galbreath told Mr. Keene that she would have someone get back to him.

44.     Two (2) days after his conversation with Ms. Galbreath, Mr. Keene received a telephone call from Mr. Childs, in which Mr. Childs said he had heard that Mr. Keene had an "attitude" about why he did not get promoted, a problem with how many people of color were in Esterline's senior management, and that he felt he was being treated unfairly.

45.     Mr. Keene told Mr. Childs that he did not have an attitude, and that he had only asked how many people of color were in Esterline's senior management. Mr. Keene complained to Mr. Childs that he was the only Black employee in his organization, and that he was concerned that he may not have other opportunities to advance because of his age (62).

46.     Defendants took no action to investigate Mr. Keene's complaints of discrimination.

47.     Despite Defendants' discriminatory rejection of Mr. Keene for promotion, and the company's failure to investigate his complaints, Mr. Keene continued to meet or exceed all performance expectations.

TransDigm's Acquisition of Esterline

48.     In the Spring of 2018, Esterline hired Denise Millard (Caucasian) as Vice President, Sales and Marketing, to report to Mr. Childs.

49.     On October 10, 2018, TransDigm announced plans to acquire Esterline.

50.     In or about October 2018, Mr. Keene learned that the Company would not pay him a bonus consistent with his prior compensation as agreed by Mr. Buchan upon his transition to Korry. Mr. Keene complained about the discrepancy to Korry's Human Resources department.

51.     In or about December 2018, Esterline advised Mr. Keene that he would report to Stephen Burn (Caucasian, 30s), a Senior Director for Sales and Marketing, rather than Mr. LeGuay.

52.     In or about December 2018, Mr. Burn offered to pay Mr. Keene part of the previously promised bonus, but no bonus amounts were ever paid to Mr. Keene.

53.     On March 1, 2019, Ms. Millard notified Esterline employees via internal Memo that all the Esterline Sales, Marketing and Business Development and Contract team members would start reporting to the individual divisions of Esterline.

54.     With respect to Sales and Business Development, Ms. Millard listed the new division assignments by name. Ms. Millard's March 1, 2019 Memo identified five (5) U.S.-based employees to be assigned to Korry: Mr. LeGuay, Rich Webster (Caucasian, 60s), Ash Hussein (race and age unknown), Paul Hazen (Caucasian, 40s), and Mr. Keene. Upon information and belief, Mr. Keene was the oldest of the employees assigned to Korry, and the only person of color.

55.     The Sales and Business Development employees assigned to Korry reported to Matt Hansen, head of Sales and Marketing for Korry.

56.     Shortly after he received Ms. Millard's March 1, 2020 Memo, Mr. Keene received a call from Mr. Hansen confirming his role to support sales for the Korry division.

57.     Ms. Millard's March 1, 2019 Memo also identified the assignments of other Esterline employees in connection with the anticipated acquisition by TransDigm, including Steve Rooney (Caucasian, 50s) and Janice Rowe (Caucasian, 40s), who were assigned to Racal; Stephen Burn (Caucasian, 30s), Tom Arko (Caucasian, 40s), Hugo Hernandez (Latino, early 60s), who were assigned to Palomar; and Steve Riebel (Caucasian, late 50s), who was assigned to Mason Controls.

58.     TransDigm's acquisition of Esterline closed on March 14, 2019.

<u>Defendants' Discriminatory and Retaliatory Termination of Keene's Employment</u>

59.     On March 15, 2019, Mr. Keene spoke to Ms. Millard about the impact of the TransDigm acquisition. Ms. Millard shared with Mr. Keene that she and Mr. Childs were not being retained. Ms. Millard also mentioned to Mr. Keene that the leadership of the new organization appeared to be all Caucasian men, as there were no women or people of color on the company's organization chart.

60.     In the same conversation, Ms. Millard also told Mr. Keene that TransDigm was planning layoffs, and he could be impacted.

61.     The same day, on March 15, 2019, Mr. LeGuay and Minor Harris (Caucasian, 45), Director of Human Resources, called Mr. Keene and terminated his employment, effective immediately. Messrs. LeGuay and Harris claimed that Mr. Keene was being terminated because the Business Development Manager position was being eliminated.

62.     Mr. Keene questioned Defendants' reasons for his termination since he had been notified as of March 1, 2019 of his transition to a sales position in support of the Korry division. Mr. Keene also asked why Defendants were not terminating someone with less seniority. Mr. Keene did not get responses to his questions.

63.     Upon information and belief, Mr. Keene was the only one whose employment was terminated out of the five (5) employees assigned to support sales for the Korry division in Ms. Millard's March 1, 2019 Memo.

64.     Upon information and belief, Mr. Keene was the only Black employee assigned to the Korry division.

65.     Upon information and belief, Mr. Keene was the oldest employee assigned to the Korry division.

66.     Upon information and belief, Mr. Keene was the only employee assigned to the Korry division in connection with the TransDigm acquisition who had made an internal complaint of discrimination.

67.     Mr. Keene was as qualified, if not more qualified, than the other employees who were retained by Defendant and who were Caucasian, younger and/or had not made complaints of discrimination.

68.     Upon information and belief, Defendants did not terminate the employment of any of the other sales, contract or business development employees identified in Ms. Millard's March 1, 2019 Memo in connection with TransDigm's acquisition of Esterline.

69.     Defendants terminated Mr. Keene's employment because of his age, race and/or in retaliation for his prior complaints of discrimination.

70.     Defendants' assertion that they terminated his employment because his job was eliminated is just a pretext for discrimination and retaliation.

71.     Defendants presented Mr. Keene with a Severance Agreement and Release on March 15, 2019, in which they offered him $55,816.96 in severance pay and other benefits in exchange for a release of claims.

72.     Pursuant to the Severance Agreement and Release, Defendants instructed Mr. Keene that he was required to sign a release of "all claims" in order to get his severance pay.

73.     The Severance Agreement and Release presented to Mr. Keene did not comply with the legal requirements of the Older Workers Benefit Protection Act ("OWBPA"), including the notice and revocation periods, even though it sought to require Mr. Keene to release "all legal claims," including any claim for age discrimination pursuant to the ADEA.

74.     Defendants presented Mr. Keene with a Severance Agreement and General Release that did not comply with the OWBPA in order to pressure him into signing the release in just five (5) days, and trick him into thinking he had released his claims for age discrimination.

75.     Mr. Keene did not sign the Severance Agreement and General Release as presented by Defendants.

76.     On March 16, 2019, Mr. Keene communicated to Mr. Childs in an e-mail that he had been told that he would have a position in the new organization, referenced his age and race, and asked how the decision to terminate his employment had been made.

77.     The same day, Mr. Childs responded by e-mail and said Defendants had not followed the recommendation made by Ms. Millard and Mr. Hansen, which was to retain Mr. Keene as part of the Korry team.

78.     Defendants' business leaders reached out to Mr. Keene to obtain his consulting services following his termination from employment, but Defendants would not permit Mr. Keene to provide consulting services because he refused to sign a release of claims.

79.     In response to Plaintiff's PHRC Complaint, in direct contradiction to Ms. Millard's March 1, 2019 Memo, Defendants asserted that Mr. Keene never reported to Mr.

11

Hansen, and instead continued to report to Mr. Burn until his job was eliminated as of March 15, 2019, in connection with the acquisition.

80.     To the contrary, Mr. Keene's position had already been transitioned to sales in support of Korry, and Mr. Burn's reporting assignment also changed as of March 1, 2019, to support the Palomar division.

81.     Defendants' discriminatory and retaliatory actions were willful and warrant the imposition of liquidated damages.

82.     Defendants' discriminatory and retaliatory actions were intentional and implemented with malice and/or a reckless indifference to Mr. Keene's civil rights and warrant the imposition of punitive damages.

83.     As a direct and proximate result of Defendants' discriminatory and retaliatory conduct, Mr. Keene has incurred, and continues to incur, a loss of earnings and/or earning capacity, pain and suffering, embarrassment, humiliation, mental anguish, and loss of life's pleasures.

<u>COUNT I</u>

Race Discrimination and Retaliation in violation of
<u>Section 1981 of the Civil Rights Act of 1866</u>

84.     Plaintiff hereby incorporates by reference the foregoing paragraphs as though fully set forth herein.

85.     Defendants violated Section 1981 by failing to select Plaintiff for the position of Vice President of Sales in or about September 2017 because of his race.

86.     Defendants violated Section 1981 by treating Plaintiff differently with respect to the terms and conditions of his employment because of his race and/or in retaliation for his internal complaint of race discrimination.

87.     Defendants violated Section 1981 by terminating his employment in March 2019 because of his race and/or in retaliation for his internal complaint of race discrimination.

<u>COUNT II</u>

Race Discrimination and Retaliation in violation of
<u>Title VII of the Civil Rights Act of 1964</u>

88.     Plaintiff hereby incorporates by reference the foregoing paragraphs as though fully set forth herein.

89.     Defendants violated Title VII by treating Plaintiff differently with respect to the terms and conditions of his employment because of his race and/or in retaliation for his internal complaint of race discrimination

90.     Defendants violated Title VII by terminating his employment in March 2019 because of his race and/or in retaliation for his internal complaint of race discrimination.

<u>COUNT III</u>

Race Discrimination and Retaliation in violation of the
<u>Pennsylvania Human Relations Act</u>

91.     Plaintiff hereby incorporates by reference the foregoing paragraphs as though fully set forth herein.

92.     Defendants violated the PHRA by treating Plaintiff differently with respect to the terms and conditions of his employment because of his race and/or in retaliation for his internal complaint of race discrimination

93.     Defendants violated the PHRA by terminating his employment in March 2019 because of his race and/or in retaliation for his internal complaint of race discrimination.

<u>COUNT IV</u>

Age Discrimination and Retaliation in violation of the
<u>Age Discrimination in Employment Act</u>

94.    Plaintiff hereby incorporates by reference the foregoing paragraphs as though fully set forth herein.

95.    Defendants violated the ADEA by treating Plaintiff differently with respect to the terms and conditions of his employment because of his age and/or in retaliation for his internal complaint of age discrimination

96.    Defendants violated the ADEA by terminating his employment in March 2019 because of his age and/or in retaliation for his internal complaint of age discrimination.

<u>COUNT V</u>

Age Discrimination and Retaliation in violation of the
<u>Pennsylvania Human Relations Act</u>

97.    Plaintiff hereby incorporates by reference the foregoing paragraphs as though fully set forth herein.

98.    Defendants violated the PHRA by treating Plaintiff differently with respect to the terms and conditions of his employment because of his age and/or in retaliation for his internal complaint of age discrimination

99.    Defendants violated the PHRA by terminating his employment in March 2019 because of his age and/or in retaliation for his internal complaint of age discrimination.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff, Ronald L. Keene, Jr., respectfully requests that this Court enter judgment in favor of Plaintiff and against Defendant:

A.     Declaring the acts and practices complained of herein to be a violation of Plaintiff's civil rights;

B.     Requiring Defendants to reinstate Plaintiff to a position equivalent to the one he was denied, and to award him full wages and benefits commensurate to that position;

C.     Awarding to Plaintiff compensation for all past and future pecuniary losses resulting from Defendants' unlawful employment practices, including but not limited to all compensation and benefits lost due to the actions of Defendants, all out of pocket losses, as well as an award of front pay, if re-employment is not possible;

D.     Awarding to Plaintiff compensation for all past and future non-pecuniary losses resulting from Defendants' unlawful employment practices, including but not limited to, pain and suffering, emotional distress, humiliation, embarrassment, and a loss of life's pleasures, in amounts to be determined at trial;

E.     Awarding to Plaintiff liquidated damages for Defendants' willful violation of the ADEA;

F.     Awarding to Plaintiff punitive damages for Defendants' malicious and reckless conduct as described herein, in an amount to be determined at trial;

G.     Awarding to Plaintiff costs of this action, together with reasonable attorneys' fees;

H.     Awarding to Plaintiff prejudgment interest; and

I.     Granting to Plaintiff such additional relief as the Court deems just and proper under the circumstances.

<u>JURY TRIAL DEMANDED</u>

Plaintiff hereby requests a jury trial on each of the Counts in this Complaint.

Respectfully submitted,

CONSOLE MATTIACCI LAW, LLC

<u>s/ Julie A. Uebler</u>
Julie A. Uebler, Esquire (ID No. 71297)
1525 Locust Street, 9th Floor
Philadelphia, PA 19102
(215) 545-7676 (Voice)
(215) 501-5957 (Fax)
uebler@consolelaw.com

Attorneys for Plaintiff
Ronald L. Keene, Jr.

16

# EXHIBIT A

COMMONWEALTH OF PENNSYLVANIA
GOVERNOR'S OFFICE
PENNSYLVANIA HUMAN RELATIONS COMMISSION

## **COMPLAINT**

| | |
|---|---|
| COMPLAINANT: | : |
| **RONALD L. KEENE, JR.** | :    Docket No. |
| v. | : |
| RESPONDENT: | : |
| **TRANSDIGM GROUP, INC.** | : |
| and | : |
| **TRANSDIGM GROUP INCORPORATED** | : |
| and | : |
| **KORRY ELECTRONICS CO.** | : |

1. The Complainant herein is:

   Name:    Ronald L. Keene, Jr.

   Address:    REDACTED

2. The Respondent herein is:

   Names:    TransDigm Group, Inc.; TransDigm Group, Incorporated; Korry
   Electronics Co.

   Address:    1301 East 9th Street, Suite 3000
   Cleveland, OH 44114

3.  I, <u>Ronald L. Keene, Jr.</u>, the Complainant herein, allege that I was subjected to unlawful discrimination because of my race (black) and my age (63), and unlawful retaliation because of my complaints of race and age discrimination, as set forth below.

**Discrimination and Retaliation**

**A.  I specifically allege:**

[1]        I was hired by Respondents on or about June 1, 2010.

[2]        I had over eight (8) years of service at Respondents.

[3]        I consistently performed my job duties in a highly competent manner, and received positive feedback.

[4]        I last held the position of Sales Manager.

[5]        I worked from my home office in Pennsylvania.

[6]        I last reported to Matthew Hanson (white, 45[1]), Director of Program Office.  Hanson reported to Robert Gibbs (white, 53), Vice President of Korry Electronics. Gibbs reported to Jason Childs (biracial, 48), President of Control and Communication Systems. Childs reported to Albert Yost (white, 58), Segment President.  Yost reported to Curtis Reusser (white, 66), President and Chief Executive Officer.

[7]        In or about January 2018, I applied for the posted Vice President of Sales position.  I was qualified for the position.

[8]        In or about January 2018, I interviewed with Childs.

[9]        In or about February 2018, in a phone call with _____ (white), Human Resources, I learned that Respondents failed to promote me to the Vice President of Sales position.  I asked how many people of color were in represented in Respondents' senior

_____

[1] All ages herein are approximations.

management; I believed that Respondents' decision to not promote me was based on race. I did not receive a response to my question, and was accused of having "an attitude."

[10]     In or about February 2018, two (2) days after I was told that I was not being promoted, I received a phone call from Childs, stating that he heard that I had "an attitude" regarding why I did not get promoted and a problem with how many people of color were in represented in Respondents' senior management, and that I felt I was being treated unfairly. I stated that I did not have an attitude, and that I had only asked how many people of color were in Respondents' senior management. Childs stated that there was a Vice President who was a minority in another group. I complained that I was the only black employee in Childs' organization and, because of my age, there may not be other opportunities for me to advance at Respondents.

[11]     Instead of promoting me, Respondents selected Pascal LeGuay (white, 43) for the Vice President of Sales position.

[12]     Respondents failed to investigate my complaints of race and age discrimination.

[13]     Following my race and age discrimination complaints, I was treated differently, and in a more dismissive manner, than white and/or younger and/or noncomplaining employees. I was ignored, avoided, and excluded.

[14]     In January 2019, Respondents gave me a smaller bonus than I should have received, per the terms of my agreement with Respondents.

[15]     Respondents gave me a smaller bonus than I should have received because of my race and/or age and/or complaints of race and age discrimination.

[16]     In January 2019, Respondents gave me a minimal salary increase.

[17]        Respondents gave me a minimal salary increase because of my race and/or age and/or complaints of race and age discrimination.

[18]        I was told that white employees were compensated more than I was compensated.

[19]        On March 1, 2019, I began reporting to Hanson.

[20]        I was the only black employee reporting to Hanson.

[21]        I was the oldest employee reporting to Hanson.

[22]        I was the only black employee and the oldest employee indirectly reporting to Gibbs.

[23]        I was the only black employee and the oldest employee indirectly reporting to Childs.

[24]        On March 15, 2019, in a phone call with Denise Mallard (white, 52), Executive Vice President of Sales and Marketing, I was told that Respondents were reducing the size of the organization, and I might be a casualty.  I was told that there were other employees reporting Hanson who were being paid more than me and would be retained.

[25]        On March 15, 2019, after my call with Mallard, in a phone call with LeGuay and Minor Harris (white, 45), Director of Human Resources, Respondents terminated my employment, effective immediately.  The stated reason for my termination was that the Business Development Manager position was being eliminated.  I asked why I was being terminated because I did not hold a Business Development Manager position.  I asked why Respondents were not terminating someone with less seniority.  I did receive any answers to my questions.

[26]        Respondents' stated reasons for my termination are pretext.

[27]    I was terminated because of my race and/or age and/or complaints of race and age discrimination.

[28]    I was the only employee reporting to Hanson who was terminated on March 15, 2019.

[29]    Respondents retained all other employees reporting to Hanson—all of whom were younger and/or white and/or noncomplaining.

[30]    At the time of my termination, the following employees reported to Hanson and were **not** terminated: Alexandre Huart (white, 36), Sales Manager; Ash Hussein (white, 40), Sales Manager; Paul Hazen (white, 48), Sales Manager; Marcos Uchoa (white, 48), Sales Manager; and Rich Webster (white, 60), Sales Manager.  I was qualified, if not more qualified, to perform these employees' positions.

[31]    Respondents offered no explanation, including the selection criteria, as to why I was terminated and the younger and/or white and/or noncomplaining employees were retained.

[32]    On March 16, 2019, in an email to Childs, I stated that I had been told that I would have a position in the new organization, referenced my age and race, and asked how the decision to terminate my employment was made.

[33]    On March 16, 2019, in an email from Childs, I was told that Respondents "didn't follow the recommendations made" to retain me at Respondents.

[34]    Respondents failed to retain me at Respondents because of my race and/or age and/or complaints of race and age discrimination.

[35]    On March 20, 2019, in an email from Harris, I was falsely told that the Severance Agreement and Release with which I was presented by Respondents did not include a

waiver of Age Discrimination and Employment Act claims and, thus, "the statutory

consideration or revocation periods do not apply." The Severance Agreement and Release,

in violation of the Older Workers Benefit Protection Act, provided only a five (5) day consideration

period and contained no revocation period, and stated that "all claims of any kind" would be

released.

[36]    I refused to sign the Severance Agreement and Release.

[37]    Respondents assigned my job duties and responsibilities to white and/or

younger and/or noncomplaining employees. I was more qualified and experienced to perform

my job than the employees to whom Respondents assigned my job duties and responsibilities.

[38]    I was provided with no opportunity to remain an employee of

Respondents.

[39]    I had no performance or disciplinary issues throughout my employment.

[40]    Respondents' comments and conduct evidence a bias against black and/or

older and/or complaining employees.

[41]    Respondents' demographics demonstrate a bias against black employees.

[42]    Respondents have an underrepresentation of black employees in high-level

positions.

[43]    Out of Respondents' thirteen (13) Officers pictured on the website, all are

white and none are black.

**B.** Based on the aforementioned, I allege that Respondent has discriminated against

me because of my race (black) and my age (63), and retaliated against me because of my

complaints of race and age discrimination, in violation of Title VII of the Civil Rights Act of

1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), the Age Discrimination in

Employment Act, as amended, 29 U.S.C. § 623 *et seq.* ("ADEA"), the Equal Pay Act, 29 U.S.C.

§ 206 *et seq.* ("EPA"), and the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et*

*seq.* ("PHRA").

    4.    The allegations in Paragraph 3 hereof constitute unlawful discriminatory practices

in violation of:

      **X**    **Pennsylvania Human Relations Act (Act of October 27, 1955, P.L.**

**744, as amended) Section 5 Subsection(s):  (a); (d)**

    ____    Section 5.1 Subsection(s) _____

    ____    Section 5.2 Subsection(s) _____

    ____    Pennsylvania Fair Educational Opportunities Act (Act of July 17, 1961,

P.L. 766, as amended) Section 4 Subsection(s) _____

    5.    Other action based upon the aforesaid allegations has been instituted by the

Complainant in any court or before any other commission within the Commonwealth of

Pennsylvania as follows:

      **X**    **This charge will be referred to the EEOC for the purpose of dual**

**filing.**

    6.    The Complainant seeks that Respondent be required to:

    (a) Make the Complainant whole.

    (b) Eliminate all unlawful discriminatory and retaliatory practice(s) and procedure(s).

    (c) Remedy the discriminatory and retaliatory effect of past practice(s) and

        procedure(s).

    (d) Take further affirmative action necessary and appropriate to remedy the violation

        complained of herein.

(e)  Provide such further relief as the Commission deems necessary and appropriate.

## VERIFICATION

I hereby verify that the statements contained in this complaint are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 P.A.C.A. Section 4904, relating to unsworn falsification to authorities.

5/2/19
_____
(Date Signed)

_____
(Signature)    Ronald L. Keene, Jr.

REDACTED

# EXHIBIT B

EEOC Form 161-B (11/2020)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: Ronald L. Keene, Jr. REDACTED | From: | Philadelphia District Office 801 Market Street Suite 1000 Philadelphia, PA 19107 |
| --- | --- | --- |

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
| --- | --- | --- |
| 17F-2020-60563 | Damon A. Johnson, State, Local & Tribal Program Manager | (267) 589-9722 |

*(See also the additional information enclosed with this form.)*

### NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☒ More than 180 days have passed since the filing of this charge.

☐ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒ The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☒ The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Dana R. Hutter,
Deputy Director

May 7, 2021
*(Date Issued)*

Enclosures(s)

cc: For Respondent:

**Michael Friedman, Esq.**
**JACKSON LEWIS LLP**
Via email: Michael.Friedman@jacksonlewis.com

For Charging Party:

**Emily R. Derstine Friesen**
**Console Mattiacci Law, LLC**
Via email: derstinefriesen@consolelaw.com